UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF IDAHO

| | |
|---|---|
| KEGAN KINGHORN, individually,<br><br>    Plaintiff,<br><br>    v.<br><br>The CITY OF IDAHO FALLS, by and through a sub-entity, the IDAHO FALLS POLICE DEPARTMENT; Chief of Police, MARK McBRIDE; Officers DARREN COOK and SCOTT KILLIAN, Police Officers for the City of Idaho Falls,<br><br>    Defendants. | Case No.  4:14-cv-410-BLW<br><br>**MEMORANDUM DECISION** |

## INTRODUCTION

The Court has before it a motion for summary judgment filed by the defendants. The Court heard oral argument on November 2, 2015, and took the motion under advisement. For the reasons explained below, the Court will grant the motion.

## FACTUAL BACKGROUND

Plaintiff Kinghorn claims that Officers Killian and Cook used excessive force when they arrested him for public intoxication and disturbing the peace. He also claims that the Officers had no probable cause to arrest him on those charges and that he was falsely imprisoned. He brought suit in state court against the Officers, and other defendants, under 42 U.S.C. §1983 and various state laws. The defendants removed the case to this Court and have moved for summary judgment to dismiss all claims.

**Memorandum Decision – page 1**

Officers Killian and Cook both work for the Idaho Falls Police Department. On August 2, 2014, they were dispatched to a residence in Idaho Falls to investigate a "possible trespass in progress". *See Killian Deposition (Dkt. No. 18-2)* at p. 7. Officer Killian arrived first and spoke with the apparent home owner, Delores Smith, at the front door. *See Killian Declaration (Dkt. No. 15-9)* at ¶7. Smith told Officer Killian that Kinghorn had been staying with her but that she had kicked him out of the residence, at which time he became very aggressive and abusive towards her and her animals. *Id.* She explained that Kinghorn was making her nervous, that she was scared for her safety, and that "she wanted him gone." *Id.* Smith also explained that Kinghorn had agreed to leave the premises and had gathered his belongings, leading her to believe he had left. But later she saw that he remained in the backyard, supposedly waiting for someone to pick him up. Smith directed Officer Killian to where Kinghorn was, on the side of the property. As Officer Killian approached that area, he turned on his body camera. *Id*. at ¶ 8.

Kinghorn states that at this time he was in the backyard "talking over a chain link fence to the neighbor" and "drinking a beer." *See Kinghorn Declaration (Dkt. No. 18-3)* at ¶ 3. Officer Killian asked for Kinghorn's identification, stating that Idaho law gives police the authority to ask for identification of anyone drinking alcohol. *See Video (00:20 to 00-28)*. Kinghorn alleges that Officer Killian approached him "in [an] aggressive fashion." *Id.* at ¶ 4. Kinghorn hands Officer Killian his driver's license and then, according to his own account, Kinghorn tried to avoid Officer Killian, refused to obey his commands, and "used strong language towards the officer and used the f-word repeatedly." *Id.*

**Memorandum Decision – page 2**

The video shows that as Kinghorn walks away from Officer Killian, Kinghorn picks up a knife. *Video (00:40 to 00:43).* Officer Kinghorn directs him to drop the knife, and he complies, but refuses the Officer's command to be seated, and displays a hostile and belligerent attitude. Kinghorn makes a motion toward Officer Killian, and the Officer responds by pushing Kinghorn in the chest, causing him to take a step back. *Id. (1:23 to 1:28).* Kinghorn then strides quickly away, jumps the fence, and walks on the road outside the home.

At this point Officer Killian tells Kinghorn that he is under arrest for public intoxication. *Video (1:35 to 1:45).*[1] Officer Killian pursued Kinghorn as he first walked on the road outside the front of the house, and then walked back around the fence, returning to the back yard where he allowed Officer Killian to handcuff him. *Id.; see also Killian Declaration, supra* at ¶ 9.

Officer Killian then walks Kinghorn to the police car along the public road. During this walk, Kinghorn is shouting expletives at the Officer. *Video (2:39 to 2:45).* At this point, Officer Killian tells Kinghorn that he is adding a charge for disturbing the peace. *Id.*

Officer Cook was waiting at the car, and the Officers conducted a pat-down search of the handcuffed Kinghorn. Kinghorn continues to berate the officers in a loud voice.

---

[1] Kinghorn alleges that far earlier in the confrontation – almost immediately after they first met – Officer Killian "said I was under arrest for public intoxication." *See Kinghorn Declaration, supra,* at ¶ 4. However, the video conclusively refutes this allegation. As the video shows, Officer Killian does not put Kinghorn under arrest for public intoxication until after Kinghorn has refused to obey instructions, picked up and discarded a knife, moved around the yard, shouted expletives at the Officer, jumped a fence, and started walking along a public road. When a video conclusively refutes an allegation, the Court may credit the video. *See Scott v. Harris*, 550 U.S. 372, 380 (2007), (holding that police dash-cam video so "utterly discredited" plaintiff's account of a car chase that "no reasonable jury could believe" plaintiff).

**Memorandum Decision – page 3**

He ignores their multiple commands to get into the back seat of the police car. *Video (4:25 to 4:35).* At this point, Kinghorn alleges that Officer Cook kicked Kinghorn "in the knee." *Id*. at ¶ 7. Kinghorn asserts that the "kick was with the foot" and "did extensive damage to the knee." *Id.* Officer Cook disputes this account, testifying that he "kneed Kinghorn in the common peroneal nerve (a pressure point) in the thigh area to make Kinghorn's leg go limp so that we could move Kinghorn into a sitting position in the car." *See Cook Declaration (Dkt. No. 16)* at ¶5. The video in inconclusive and does not clearly resolve the conflict in the testimony. The Court will therefore assume the truth of Kinghorn's account for the purpose of this summary judgment proceeding.

Upon being kicked, Kinghorn falls into a seated position in the car, and then immediately and aggressively springs out of the car, yelling at the officers and moving in a hostile manner into them. *Video (4:30 to 4:50).* There is a struggle in which, Kinghorn alleges, the Officers "jumped upon me and tackled me into the roadway which was asphalt." *Id.* at ¶ 8. Kinghorn alleges that this tackling caused him to suffer "severe cuts over my facial area" along with "a broken nose, chipped teeth, chipped orbital bone, injured sternum, broken rib, rotator cuff problem, [and] concussion" along with the previously mentioned injury to his knee. *Id.* at ¶ 9. In addition, Kinghorn suffers from "post-traumatic stress syndrome as a result of the physical and emotional injuries he has endured." *See Young Declaration (Dkt. No. 18-4)* at ¶ 6.

Officer Cook then transported Kinghorn to the hospital for treatment. After being treated at the hospital he was booked into the jail on charges of public intoxication, disturbing the peace, resisting and obstructing, battery on an officer and simple battery.

**Memorandum Decision – page 4**

*See Cook Declaration, supra,* at ¶ 9.  Kinghorn pled guilty to the crimes of disturbing the peace, battery and battery on a police officer (all misdemeanor counts), for which he was sentenced to concurrent sentences of 180, 365 and 180 days, respectively, and received credit for 34 days of time served.  He was fined $3,000, with all but $500 suspended, and order to pay restitution.  *Williams Declaration (Dkt. No. 15-4)* at Exhibit A.  His sentence was suspended and Kinghorn was placed on supervised probation for two years.  *Id.*

Kinghorn filed this lawsuit under §1983 and various state laws against (1) the City of Idaho Falls; (2) the Idaho Falls Police Department; (3) Chief of Police Mark McBride; (4) Officer Cook; and (5) Officer Killian.  Kinghorn alleges that he was falsely arrested, falsely imprisoned, subjected to excessive force and battery, and that the City of Idaho Falls and the Police Department, through Police Chief Mark McBride, failed to adequately train, supervise and discipline police officers, which resulted in the August 2 incident.

The defendants have filed a motion for summary judgment seeking to dismiss all claims.  The Court will resolve that motion after reviewing the governing legal standards

### LEGAL STANDARDS

Summary judgment is appropriate where a party can show that, as to any claim or defense, "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a).  One of the principal purposes of the summary judgment "is to isolate and dispose of factually unsupported claims . . . ." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323-24 (1986).  It is "not a disfavored procedural shortcut," but is instead the "principal tool[ ] by which factually insufficient claims or

**Memorandum Decision – page 5**

defenses [can] be isolated and prevented from going to trial with the attendant unwarranted consumption of public and private resources." *Id*. at 327. "[T]he mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment." *Anderson v. Liberty Lobby, Inc*., 477 U.S. 242, 247-48 (1986). There must be a genuine dispute as to any *material* fact – a fact "that may affect the outcome of the case." *Id.* at 248.

The evidence must be viewed in the light most favorable to the non-moving party, and the Court must not make credibility findings. *Id.* at 255. Direct testimony of the non-movant must be believed, however implausible. *Leslie v. Grupo ICA*, 198 F.3d 1152, 1159 (9th Cir. 1999). On the other hand, the Court is not required to adopt unreasonable inferences from circumstantial evidence. *McLaughlin v. Liu*, 849 F.2d 1205, 1208 (9th Cir. 1988).

The moving party bears the initial burden of demonstrating the absence of a genuine dispute as to material fact. *Devereaux v. Abbey*, 263 F.3d 1070, 1076 (9th Cir. 2001) (en banc). To carry this burden, the moving party need not introduce any affirmative evidence (such as affidavits or deposition excerpts) but may simply point out the absence of evidence to support the nonmoving party's case. *Fairbank v. Wunderman Cato Johnson,* 212 F.3d 528, 532 (9th Cir.2000).

This shifts the burden to the non-moving party to produce evidence sufficient to support a jury verdict in her favor. *Deveraux*, 263 F.3d at 1076. The non-moving party must go beyond the pleadings and show "by her [ ] affidavits, or by the depositions,

answers to interrogatories, or admissions on file" that a genuine dispute of material fact exists.  *Celotex,* 477 U.S. at 324.

## ANALYSIS

**False Arrest**

To recover damages under 42 U.S.C. § 1983, Kinghorn must prove by a preponderance of the evidence that the defendants deprived him of a constitutional right while acting under color of state law. *See Gritchen v. Collier,* 254 F.3d 807, 812 (9th Cir.2001).  Kinghorn argues that his arrest for public intoxication violated his Fourth Amendment rights.

At the time of the August 2, 2013 incident, Idaho Falls had a public intoxication ordinance, since repealed, stating: "Any person who is intoxicated in or upon any public street, alley, park, or other public place is guilty of a misdemeanor."  *See Idaho Falls Ordinance §5-22-7.*  As discussed above, Officer Killian placed Kinghorn under arrest for public intoxication as Kinghorn walked along a public road.

"If an officer has probable cause to believe that an individual has committed even a very minor criminal offense in his presence, he may, without violating the Fourth Amendment, arrest the offender." *Atwater v. City of Lago Vista*, 532 U.S. 318, 354 (2001).  The arrest is proper as long as the "available facts suggest a fair probability that the suspect has committed a crime." *Tatum v. City and County of San Francisco,* 441 F.3d 1090, 1094 (9th Cir. 2006).

Here, the undisputed evidence shows (1) that Officer Killian entered onto the property at the request of Delores Smith, who told him that Kinghorn was acting in an

**Memorandum Decision – page 7**

aggressive and abusive manner toward her and was trespassing on her property; (2) that Kinghorn was drinking a beer when Officer Killian confronted him; and (3) that Kinghorn ignored the Officer's commands, picked up and discarded a knife, refused commands, shouted expletives at the Officer as he placed a large blanket over a gate, acted in a hostile and belligerent manner, jumped a fence, and started walking along a public road still shouting at the Officer. It was only at this point – as Kinghorn was walking along the public road – that Officer Killian placed him under arrest for public intoxication. These undisputed facts constitute probable cause for Officer Killian to arrest Kinghorn for public intoxication.

Kinghorn also takes issue with his arrest for disturbing the peace. Under Idaho law, this offense is committed by a person who "maliciously and willfully disturbs the peace or quiet of any neighborhood . . . by loud or unusual noise, or by tumultuous or offensive conduct, or by . . . quarreling . . . is guilty of a misdemeanor." *See Idaho Code §18-6409(1)*. The video shows conclusively that Kinghorn was shouting expletives and excoriating Officer Killian as he walked Kinghorn along the public road, within a neighborhood of homes, to the police car. It was at that point that Officer Killian added the charge of disturbing the peace. Officer Killian clearly had probable cause to arrest Kinghorn for that charge.

For all these reasons, Kinghorn's claim for false arrest must be dismissed.

**False Imprisonment**

Kinghorn's claim for false imprisonment depends entirely on his claim for false arrest. Because that latter claim fails, the former falls as well.

**Memorandum Decision – page 8**

**Excessive Force**

Kinghorn argues that the Officers used excessive force in (1) kicking his knee, and (2) forcing him to the pavement.  The use of force violates the Fourth Amendment if "it is excessive under objective standards of reasonableness." *Graham v. Connor*, 490 U.S. 386, 388 (1989).  The analysis must be based on "the perspective of a reasonable officer on the scene, rather than with the 20/20 vision of hindsight." *Id.* at 396.  This standard requires the Court to balance the amount of force applied against the need for that force to determine what a reasonable juror could decide.  *Deorle v. Rutherford*, 272 F.3d 1272, 1279 (9th Cir.2001).  In determining the need for force, the Court must pay "careful attention to the facts and circumstances of [the] particular case, including the severity of the crime at issue, whether the suspect poses an immediate threat to the safety of the officers or others, and whether [the suspect] is actively resisting arrest or attempting to evade arrest by flight." *Graham*, 490 U.S. at 396.

The Ninth Circuit summarizes this analysis in three steps.  *Glenn v. Washington County,* 673 F.3d 864, 871 (9th Cir. 2011).  First, the Court "must assess the severity of the intrusion on the individual's Fourth Amendment rights by evaluating the type and amount of force inflicted."  Even "where some force is justified, the amount actually used may be excessive."  *Id.*  Second, the Court must evaluate the government's interest in the use of force.  *Id.*  Finally, the Court must "balance the gravity of the intrusion on the individual against the government's need for that intrusion."  *Id.*  Because the excessive force inquiry "nearly always requires a jury to sift through disputed factual contentions, and to draw inferences therefrom, we have held on many occasions that summary

**Memorandum Decision – page 9**

judgment or judgment as a matter of law in excessive force cases should be granted sparingly." *Id.*

The Court turns first to Kinghorn's allegation that the Officers kicked him in the knee. The video shows conclusively that Kinghorn was ignoring numerous commands to enter the police car, yelling at the police, and resisting their attempts to get him into the car and effectuate the arrest. At this point the Officers were entitled to use force to effect a valid arrest. *Graham*, 490 U.S. at 396 (noting "[o]ur Fourth Amendment jurisprudence has long recognized that the right to make an arrest or investigatory stop necessarily carried with it the right to use some degree of physical coercion or threat thereof to effect it"). The Officer was attempting to use a proven technique whereby the suspect is kneed in the thigh to deaden a nerve, thereby temporarily rendering him unable to resist arrest. Under the circumstances of this case, the use of that technique would have clearly been reasonable.

But Kinghorn alleges that the Officer used his foot to kick Kinghorn's knee, and the Court must assume the truth of that allegation in this summary judgment proceeding. It makes no difference. As *Graham* holds, when a suspect, validly arrested, resists and refuses to comply with orders to be seated in the police car, an officer is justified in using appropriate force to compel the suspect to comply. Ideally that force should be the peroneal nerve technique. But when a suspect acts as Kinghorn did here, the police have to act quickly and forcibly, and a kick in the knee cannot be deemed excessive.

Kinghorn argues that the Officers used excessive force when they forced him to the ground. Under *Glenns's* balancing analysis, the take-down of Kinghorn was a

**Memorandum Decision – page 10**

substantial use of force. Balancing that force against the need for that force, the Officers were responding to an aggressive and hostile action of Kinghorn in springing from the car in a confrontational manner toward the officers. Kinghorn had now escalated the conflict, giving the Officers the right to escalate the force necessary to subdue him. Thus, in balancing the force employed against the need for that force, the Court finds as a matter of law that the take-down maneuver used by Officers Cook and Killian did not constitute excessive force as a matter of law.

But even if it did, the Officers have qualified immunity. Qualified immunity operates to protect officers from the sometimes "hazy border between excessive and acceptable force," and to ensure that before they are subjected to suit, officers are on notice their conduct is unlawful. *Brosseau v. Haugen,* 543 U.S. 194, 201 (2004). "If the law at that time did not clearly establish that the officer's conduct would violate the Constitution, the officer should not be subject to liability or, indeed, even the burdens of litigation." *Id.* at 599.

In this case, Kinghorn cites no case where a take-down maneuver under the circumstances faced here – where a suspect under lawful arrest had been ignoring commands, berating the officers, and escalating a physical confrontation with the officers – had been found to constitute excessive force. Thus, even if the maneuver is now deemed to constitute excessive force, it would not have been clear to a reasonable officer at the time he used the take-down maneuver on Kinghorn that his conduct was unlawful.

For all of these reasons the excessive force claims must be dismissed.

### <u>Monell</u> Claim

**Memorandum Decision – page 11**

Because Kinghorn's arrest and imprisonment were proper, and no excessive force was used on him, his claims challenging the City's policies (under *Monell v. New York City Dep't of Soc. Servs.*, 436 U.S. 658, 708 (1978)) or lack of supervision and training (under *City of Canton v. Harris,* 489 U.S. 378, 390 (1989)) must be dismissed.

### *Heck v Humphrey* Analysis

As an independent ground for dismissal of the §1983 claims, the Court finds persuasive the argument made by defendants under *Heck v. Humphrey*, 512 U.S. 477 (1994). *Heck* holds that when a plaintiff seeking damages in a §1983 suit has pled guilty to a crime, "the district court must consider whether a judgment in favor of the plaintiff would necessarily imply the invalidity of his [plea of guilty]." *Id*. at 487. If the answer is yes, the suit is barred. *Id*.

In this case, Kinghorn pled guilty to the crimes of disturbing the peace, battery and battery on a police officer, all arising out of the incident that he claims constituted a false arrest, false imprisonment and excessive force. A judgment for Kinghorn on his §1983 claim would necessarily imply that his plea of guilty was invalid. If there was not probable cause to arrest Kinghorn, and subsequently confine him for any of the charged crimes, then his arrest and imprisonment for them would have been invalid because the officers did not otherwise have an arrest warrant. Thus, his subsequent charges, guilty plea and sentence would also be invalid. Additionally, if Kinghorn believes the officers used excessive force on him, then his battery charges would have been defensible because he would have been privileged to act in self-defense against such use of unlawful force. Under these circumstances, Heck requires dismissal of the §1983 claims.

**Memorandum Decision – page 12**

**State Law Claims**

Before a plaintiff may file any civil action based on state law against a law enforcement officer for a claim arising out of the performance of the officer's duties, the plaintiff must post a bond under Idaho Code § 6-610. *See, e.g., Timothy v. Oneida Cnty,* 2014 WL 4384348 (D.Id. 2014) (stating that the bond requirement applies to state law claims but not federal claims). Significantly, this is a condition precedent to filing suit. I.C. § 6-610(2.) If the plaintiff fails to post the bond, the court "shall dismiss the case." I.C. § 6-610(5).

It follows that if a plaintiff claims to be indigent, and seeks to be exempted from the bond requirement under Idaho Code § 31-3220, he must submit an affidavit showing such indigency prior to commencement of the action. *See also* I.C. § 31-3220(2) (stating that upon a proper showing by the plaintiff that he is indigent the court may authorize the commencement of the action). In this case, there is no evidence that Kinghorn posted a bond or sought an exemption before commencing this lawsuit. Consequently, he has not satisfied this mandatory condition precedent.

Kinghorn argues, however, that the defendants failed to plead the lack of a bond as an affirmative defense and have therefore waived that defense. The Idaho Supreme Court so held in 1973. *See Garren v. Butigan,* 509 P.2d 340 (Id.Sup.Ct. 1973). But nine years later, in 1982, the Idaho Supreme Court modified *Garren* by holding that if the affirmative defense is brought up in a summary judgment motion, and the opposing party has an opportunity to respond, the failure to plead the affirmative defense in an earlier filed responsive pleading does not result in a waiver. *Bluestone v Mathewson,* 649 P.2d

**Memorandum Decision – page 13**

1209 (Id.Sup.Ct. 1982). Here, Kinghorn has had a full opportunity to respond to the bond issue, as it was raised by defendants in their opening brief. Applying *Bluestone*, the Court finds no waiver. The failure to file the bond results in the dismissal of the state law claims.

## Conclusion

The analysis above results in the dismissal of all claims. The Court will therefore grant the motion for summary judgment filed by defendants in a separate Judgment as required by Rule 58(a).

DATED: November 3, 2015

_____
B. Lynn Winmill
Chief Judge
United States District Court